IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

MITCHELL BROCK,                          *

    Plaintiff,                      *

vs.                                      *

                                          CASE NO. 4:14-CV-264 (CDL)

THE COLUMBUS CONSOLIDATED            *
GOVERNMENT, R.T. BOREN, ISAIAH
HUGLEY, THOMAS E. BARRON, STEVE *
COX, HARVEY HATCHER, JOBY
DUNCAN, and RANDY LONG,              *

    Defendants.

_____

O R D E R

After Plaintiff Mitchell Brock, a police officer, was indicted by a state grand jury for two felony offenses, the Chief of Police, Defendant R.T. Boren, placed him on administrative leave without pay and then fired him. Brock claims that his supervisors, motivated by racial animus, fabricated evidence to support the criminal charges against him. Without their racially motivated conduct, Brock claims he would have never been indicted and thus would have never been terminated. He filed this action pursuant to 42 U.S.C. § 1981 and § 1983 against the Columbus Consolidated Government and against the following city officials in their individual capacities: police chief R.T. Boren; police officers Harvey Hatcher, Joby Duncan, and Randy Long; and city manager Isaiah

Hugley, and human resources director Thomas E. Barron. Brock seeks to amend his Complaint (ECF No. 11), and the Court grants him permission to do so. Defendants filed a motion to dismiss for failure to state a claim (ECF Nos. 6, 14). Because Brock fails to allege sufficient facts in either his original or amended Complaint plausibly stating a claim for race-based discrimination, the Court dismisses this action.

## MOTION TO DISMISS STANDARD

"To survive a motion to dismiss" under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In other words, the factual allegations must "raise a reasonable expectation that discovery will reveal evidence of" the plaintiff's claims. *Id.* at 556. "Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because 'it strikes a savvy judge that actual proof of those facts is improbable.'" *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556).

PLAINTIFF'S FACTUAL ALLEGATIONS

Brock alleges the following facts in support of his claims. The Court accepts these allegations as true for purposes of the pending motion to dismiss.

Brock—a young black man—was beginning his career as a police officer in Columbus, Georgia when two individuals were murdered. Brock's supervisors at the police department showed him pictures of the victims and Brock identified one as his brother James's ex-girlfriend. Because he knew one of the victims, Brock was instructed by his superiors—Lieutenant Cox, Detective Duncan, and Sergeant Hatcher—to stay out of the investigation. Brock agreed, and alleges that he "did not ever initiate any involvement in the investigation." Compl. ¶ 33, ECF No. 1.

Brock was, however, accused of involving himself in the murder investigations in two ways. First, he contacted a witness's former employer, which resulted in his indictment for attempting to influence a witness. Second, he was accused of making a threatening hand gesture toward another witness, which resulted in his indictment for threatening a witness.

## I.   Attempt to Influence a Witness

Shortly after the murders occurred, Brock helped his mother locate a woman that, unbeknownst to Brock, was a witness in the murder cases. James's ex-girlfriend and a roommate, Jarren,

lived in an apartment leased by Brock's mother.  After the ex-girlfriend was murdered, Brock's mother needed to contact the roommate, Jarren, but did not know her last name.  To help his mother find Jarren's last name, Brock called Jarren's former employer, IHOP.  He did not speak with Jarren.  When Brock called IHOP he did not know that Jarren was a witness in the murder cases or that by contacting her employer, he was potentially interfering with a witness.

The next day, Brock was at work when Cox asked him about the call to IHOP.  Brock explained that he was helping his mom.[1] Cox then told Brock, for the first time, that he intended to charge his brother James for the murders.  Then behind closed doors and with only Brock present, Cox, a white officer, screamed, used profanity, and said: "I'm going to put your black ass in jail too." *Id.* ¶ 36.  This statement is the only factual allegation in the Complaint suggesting that anyone at the police department held a potentially racially-motivated animus toward Brock.

Cox then relayed to Brock's training supervisor that Brock called IHOP and inquired about a witness, Jarren.  The police department took no disciplinary action against Brock at that time.

---

[1] Brock alleges that he had a similar conversation explaining his IHOP call with Duncan and Hatcher.  Brock also alleges that Duncan and Hatcher called IHOP and confirmed Brock's story.

## II.  Influencing a Witness

In addition to contacting Jarren's former employer, Brock was also accused of making a threatening hand gesture toward a witness.  While at his brother James's preliminary hearing, Brock learned that James's friend, Marvel Glover, was a witness in the murder cases.  The next day, Glover's father called the police department and claimed that he and his sons were outside Glover's apartment when Brock drove by the apartment and flashed a hand gesture simulating shooting a gun at Glover and his family.

In response, Duncan and Hatcher interviewed Glover and his brothers about the gesture and got quite a different story. Brock alleges that Glover stated that he did not feel threatened by the gesture.  One of Brock's brothers even said that he thought Brock was giving them a "peace" sign and took it as a friendly way of saying "Hey, how you doing?"  Compl. ¶ 50.

Despite this conflicting testimony, Cox reported to Brock's training supervisor that Brock made a threatening gesture toward Glover.  Brock alleges that Cox knew this information was false because Glover stated in his interview that he was not threatened by Brock's hand gesture.  Brock was not informed of the accusation or given an opportunity to respond.

### III. The Indictment

Sometime in the year after the murders, Brock alleges that Boren, Long, Duncan, and Hatcher—with Cox's input—gave the district attorney information about Brock that they knew was false.  The officers used this allegedly false information to "demand" that the district attorney seek Brock's indictment.  Brock alleges that the officers took this information to the district attorney out of a racially-motivated desire to see Brock indicted.  While Brock does allege that Cox threatened to "put his black ass in jail," Cox was not present at the meeting with the district attorney.  As to the officers that were present—Boren, Long, Duncan, and Hatcher—Brock does not allege any facts suggesting that these individuals had a racial motive when they met with the district attorney and sought his indictment.

About a year after the murders, in October 2010, a grand jury indicted Brock on two felony charges: (1) criminal attempt to influence a witness, and (2) influencing a witness.  As to the first charge, Brock was indicted for attempting to influence a witness because of his phone call to Jarren's employer, IHOP, despite the fact that Brock had explained to the officers why he contacted IHOP and no disciplinary action was taken.  As to the second charge, Brock was indicted for influencing a witness due to his allegedly threatening hand gesture toward Glover, even

though Glover gave an interview denying that he was threatened by Brock's gesture.  The same day the indictment was issued, Chief Boren put Brock on administrative leave without pay.

## IV.  Termination and Appeal

Three days later, Chief Boren terminated Brock because of his indictment.  Brock asked Chief Boren to leave him on administrative leave without pay pending the resolution of his felony charges, but the Chief refused.  Brock alleges that this violated the City policy, which required the Chief to allow Brock to remain on administrative leave pending resolution of his charges.  Brock alleges that Defendants Hugley and Barron were responsible for ensuring that the policy was administered in a nondiscriminatory way, and that they failed to do so because they allowed Chief Boren to discriminate against Brock because of his race.

Later, Chief Boren promised Brock that if he beat the criminal charges, he would get his job back.  Brock did so—a jury acquitted him of the charges.  But Chief Boren refused to give Brock his job back.  Brock alleges that, by refusing to reinstate him, Chief Boren discriminated against Brock because of his race.  Brock also alleges that Hugley and Barron should have ensured that the policy was enforced in a way that did not discriminate against him, but failed to do so.

Brock appealed his termination to the Columbus Personnel Review Board.[2] The Board, according to Brock, "rubber stamped" Chief Boren's "racially motivated decision to terminate" him. Pl.'s First Am. Compl. ¶ 63, ECF No. 11-1. Brock also blames Barron, the director of the Board, for failing to ensure that the Board did not discriminate against Brock.

As part of his employment discrimination claim, Brock avers that four white police officers also engaged in criminal conduct but were not terminated. The white officers, however, were also not indicted on felony charges.

DISCUSSION

Brock sues all the Defendants for race-based employment discrimination under § 1981 and § 1983. As to his § 1983 claim, Brock now acknowledges that his claim for violation of his rights under the Equal Protection Clause of the Fourteenth Amendment is time-barred, and therefore, the Court dismisses that claim. As to the remaining § 1981 claim, the Court grants Brock's motion to amend his Complaint, and the following discussion includes an analysis of those amended allegations.

Section 1981 states: "All persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts, to sue, be parties, give evidence, and to the

---

[2] The Complaint originally listed several municipal officers as defendants that the parties have since dismissed by stipulation. *See* ECF Nos. 3, 16. Accordingly, this Order does not address arguments made regarding the now-dismissed parties.

full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981(a). Simply put, in the employment context, an employer cannot take an adverse employment action against an employee that is motivated by the employee's race. Courts generally use the same analytical framework for § 1981 employment discrimination claims as they use for similar claims brought under Title VII. *See Bryant v. Jones*, 575 F.3d 1281, 1307 (11th Cir. 2009); *Rice-Lamar v. City of Ft Lauderdale*, 232 F.3d 836, 843 n.11 (11th Cir. 2000).

At the motion to dismiss stage, "a complaint need only 'provide enough factual matter (taken as true) to suggest intentional race discrimination.'" *Surtain v. Hamlin Terrace Found.*, No. 14-12752, 2015 WL 3719501 at *4 (11th Cir. June 16, 2015) (per curiam) (quoting *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008)). If "the well-pleaded factual allegations of a complaint plausibly suggest that the plaintiff suffered an adverse employment action due to intentional racial discrimination," then the complaint should survive a motion to dismiss. *Id.*

Although Brock certainly alleges an adverse employment action, he does not allege sufficient facts that plausibly establish that his race was a motivating factor in Chief Boren's decision to place him on administrative leave without pay and

terminate him.   Brock alleges that "Defendants Boren, Long, Duncan, Hatcher, and Cox intentionally and maliciously facilitated the D.A.'s direct presentation to the grand jury for a felony indictment of [Brock] *because of their racial animosity* toward [Brock]."   Pl.'s First Am. Compl. ¶ 54 (emphasis added). But the *only* fact Brock alleges to support this conclusion is one isolated statement by Defendant Cox, who Brock alleges said "I'm going to put your black ass in jail too."   Compl. ¶ 36. Cox was not present for the meeting with the district attorney and he did not make the decision to put Brock on administrative leave and terminate him.   Brock does not allege any facts suggesting that the other four officers that met with the district attorney—Boren, Long, Duncan, or Hatcher—shared Cox's racial animus.   Nor does Brock allege that any of the officers overheard or agreed with Cox's statement; instead, Brock alleges that Cox made the statement behind closed doors.   In sum, Brock's factual allegations do not plausibly support his conclusion that all of the Defendant police officers were motivated by race when they took the actions he complains of.

More importantly, Brock does not allege anything suggesting that Chief Boren—the decisionmaker with regard to Brock's administrative leave and termination—either personally held a discriminatory animus against Brock or knew that Cox made a racially-related comment to Brock.   Without any connection

between Cox's statement, which is the only fact suggesting racial animus, and Chief Boren's decision to terminate Brock, Brock's Complaint fails to allege that his adverse employment action occurred *due to* racial discrimination or was motivated in any way by racial animus.

In an attempt to rescue his claim, Brock seeks to rely on circumstantial evidence of racial motivation. He alleges summarily that other similarly situated white police officers engaged in similar conduct but were not put on administrative leave or terminated. But the facts alleged by Brock do not support this conclusion. To make out a prima facie circumstantial case of employment discrimination, the plaintiff must point to a comparator whose conduct is very similar to the plaintiff's conduct. *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999) (requiring "that the quantity and quality of the comparator's misconduct be nearly identical"). Brock fails to meet this requirement: he makes no allegation that any other police officers were indicted by a grand jury for two felony offenses involving witness tampering and yet retained their jobs. Brock, therefore, fails to allege facts suggesting that he was disciplined more harshly than a similarly-situated comparator.[3]

---

[3]  Although Brock's arguments suggest reliance upon the *McDonnell Douglas* analytical framework, the Court notes that the U.S.

In sum, the Court recognizes that Brock has sufficiently alleged that one individual at the police department, Cox, may have had a racial animus toward him.  The Court also recognizes that Brock alleged an adverse employment action.  But he did not allege *any* facts that either suggest or allow the Court to infer a connection between Cox's statement and the adverse employment action.  Moreover, Brock alleged no facts that plausibly establish that Chief Boren's adverse employment actions were motivated in any way by race.  Having failed to allege sufficient facts to support his claim for race-based employment discrimination, the Court grants Defendants' motion to dismiss.

CONCLUSION

The Court does not dismiss Brock's Complaint lightly.  But when a Complaint fails to allege facts that plausibly state a claim of race discrimination, it must be dismissed.  Accordingly, Defendants' motion to dismiss is granted.  (ECF No.

---

Court of Appeals for the Eleventh Circuit recently announced, "*McDonnell Douglas*'s burden-shifting framework is an evidentiary one, not a pleading requirement." *Surtain* at *4.  While the Court does not doubt that a plaintiff could sustain his claim at the motion to dismiss stage by alleging sufficient facts to meet the elements of the *McDonnell Douglas* framework, Brock has failed to do so here.  The Court does not dismiss Brock's Complaint based upon a lack of evidence.  The Complaint is dismissed because Brock fails to allege sufficient facts to make it over the *McDonnell Douglas* hurdle *or* to plausibly suggest that his adverse employment actions were motivated in any way by his race.

6).   Defendants' supplemental motion to dismiss based on qualified immunity is denied as moot.  (ECF No. 14).

IT IS SO ORDERED, this 30th day of June, 2015.

S/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA

13